**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SHEILA DAWN MIZE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-CV-105-TCK-FHM |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the court is the Report and Recommendation of United States Magistrate Judge
Frank H. McCarthy on the judicial review of a decision by the Commissioner of the Social Security
Administration denying Social Security disability benefits and the Objections thereto filed by
plaintiff, Sheila Dawn Mize. Docs. 22, 23. The Magistrate Judge recommended the
Commissioner's decision be affirmed. Mize objects to the recommendation.

**I. Standard of Review**

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part
of the magistrate judge's disposition that has been properly objected to. The district judge may
accept, reject, or modify the recommended disposition; receive further evidence; or return the
matter to the magistrate judge with instructions." However, even under a de novo review of such
portions of the Report and Recommendation, this court's review of the Commissioner's decision
is limited to a determination of "whether the factual findings are supported by substantial evidence
in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d
758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Id.* It is more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). Even if the court would have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1500 (10th Cir. 1992).

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of her alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age,

education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth the five steps in detail). The claimant bears the burden of proof at steps one through four. *Williams*, 844 F.2d at 751 n. 2. At step one, a determination is made as to whether the claimant is presently engaged in substantial gainful activity. *Id.* at 750. At step two, a determination is made whether the claimant has a medically determinable impairment or combination of impairments that significantly limit her ability to do basic work activities. *Id.* at 751. At step three a determination is made whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Id.* If it is, the claimant is entitled to benefits. *Id.* If it is not, the evaluation proceeds to the fourth step, where the claimant must show that the impairment prevents her from performing work she has performed in the past. *Id.* If the claimant is able to perform her previous work, she is not disabled. *Id.* If she is not able to perform her previous work, then the claimant has met her burden of proof, establishing a prima facie case of disability. The evaluation process then proceeds to the fifth and final step: determining whether the claimant has the residual functional capacity ("RFC")[1] to perform other work in the national economy in view of her age, education, and work experience. *Id.* The Commissioner bears the burden at step five, and the claimant is entitled to benefits if the Commissioner cannot establish that the claimant retains the

---

[1] A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite her impairments: the claimant's maximum sustained work capability. *Williams,* 844 F.2d at 751.

capacity "to perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (citation omitted).

## II. Background

Plaintiff was 41 years old on the alleged date of onset of disability and 45 on the date of the ALJ's denial decision. She has a high school education and formerly worked as a collection clerk, receptionist, deep fat fry cook, fast food cashier, general hardware salesperson and secretary. She claims to have been unable to work since November 1, 2012, as a result of back pain from scoliosis, depression, anxiety, panic attacks, restless leg syndrome and sleep apnea.

The ALJ determined that Plaintiff engaged in full time work in 2015 and in the third quarter of 2016, but there had been a continuous twelve-month period during which she did not engage in substantial gainful activity. The ALJ concluded that during the period when Plaintiff was not working, she retained the residual functional capacity ("RFC") to perform light work activity— meaning that she had the ability to lift, carry, push and pull 20 pounds occasionally and ten pounds frequently and could sit, stand or walk six hours in an eight-hour workday with normal breaks; however she could only occasionally stoop. R. 18. Based on the testimony of a vocational expert, the ALJ determined that Plaintiff is able to perform her past relevant work as a collection clerk, fast food cashier and receptionist as those jobs were actually or generally performed. Thus, the case was decided at step four of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (setting out and describing in detail the five steps).

## III. Plaintiff's Allegations

Plaintiff contends the ALJ's rejection of the opinion of treating physician David Wiegman, M.D., is not supported by substantial evidence; the ALJ improperly relied on the opinions of the

state agency physicians; and the RFC for the ability to perform the mental requirements of work is not supported by substantial evidence.

## IV. Analysis

As the Magistrate Judge noted, the period of October 1, 2016, to the date of the ALJ's denial decision, March 21, 2017, was the appropriate focus of analysis despite not covering 12 months, because if Plaintiff was unable to perform substantial gainful activity during that time and the inability to do so was expected to last for a continuous period of not less than 12 months, she would meet the definition of disability. Doc. 22 at 3-4.

### A. Consideration of Dr. Wiegman's Opinion

The record contains three copies of an Agreement for Controlled Substance Prescriptions, dated March 19, 2015, signed by Plaintiff and David *Wiegman*, M.D. R. 316, 336, 357 (emphasis added). It contains no records of any treatment or examinations of Plaintiff by Dr. Wiegman. Aside from the Medical Source Statement (Physical) dated March 2, 2016, and purportedly signed by "David *Weighman*, M.D." R. 281-282 (emphasis added),[2] there are no other medical records pertaining to Dr. Wiegman's treatment of Plaintiff.

The Medical Source Statement supposedly signed by Dr. Wiegman opines that Plaintiff was severely restricted in her ability to work: she would miss more than 10 workdays per month; she could only occasionally sit or stand; she could occasionally lift/carry up to 10 pounds; she could occasionally use her hands for fine manipulation and never for gross manipulation; she would be off-task 90% of the time due to pain; she would need to elevate her legs 5-8 times per day for 30 minutes each time to alleviate pain; and she would need to lie down 2-4 times for an

---

[2] Inexplicably, while the doctor's signature on Controlled Substances Agreement of 2015 spelled his last name "Wiegman," his name is spelled "Weighman" in the signature of the 2017 Medical Source Statement.

hour.  R. 281-282.  At the February 6, 2017, hearing, Plaintiff testified Dr. Wiegman asked her the questions on the form and she provided answers, he made notes, and said he would submit the form.  R. 55-56.

The ALJ acknowledged the content of the Medical Source Statement, but accorded it little weight, finding that  "[o]bjective medical records of evidence do not remotely support the extreme limitations listed by Dr. [Wiegman]," and "the claimant's own testimony at the hearing refute many of the limitations found in this opinion."  R. 21.  The ALJ added, "For example, the claimant sated that she was able to climb the stairs to her apartment, could stoop to use the bathroom and sit down, and could finger and handle without signification difficulty. (Hearing Testimony.)"  *Id.*

An ALJ is required to give controlling weight to a treating physician's opinion if the opinion is both:  (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) consistent with other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Id.* (quotation omitted).  If the ALJ rejects the opinion completely, specific legitimate reasons must be given for doing so.

In this case, the ALJ concluded that "although one physician provided a list of extreme limitations, they are unsupported by both objective and subjective reports." *Id.*  The ALJ also observed that:

- Even though Dr. Wiegman found the claimant would miss more than two days of work each month, she was able to work at substantial gainful activity levels in 2015 and in the third quarter of 2016 with full-time work.

- The RFC assessment was "supported by the claimant's mild objective spinal abnormalities, conservative treatment, and minimal attempt to obtain relief or therapy," and although "the claimant eventually pursued two steroidal injections, a facet block, and pain relieving medications, her medical record shows years without any treatment."

- The claimant's own activities of daily living including work activity and household dynamics demonstrate a continued ability to perform at the light exertional level including in shopping, driving, and caring for the household; and

- Although the claimant experienced pain in 2014 sufficient to prompt her to seek medical care, and she was treated with injections that were minimally effective, her providers did not recommend a more aggressive course of treatment.

*Id.*

Based on Plaintiff's work history, her limited treatment record, her reported activities of daily living, and the absence of supporting reports by Dr. Wiegman, the Court finds that the ALJ's determination is supported by substantial evidence.

### B. Reliance Upon Opinions of State Agency Physicians

Plaintiff argues that the ALJ erred in according great weight to the opinions of the state agency physicians who reviewed her medical records and rendered opinions about her RFC. Although Plaintiff is correct that opinions of treating and examining physicians should receive greater weight than the opinions of non-examining doctors (*see* 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2)), those cases are not applicable where—as here—there is no evidence that Dr. Wiegman actually treated or even examined Plaintiff during the relevant time frame of October 1 2016, to March 21, 2017. Indeed, Plaintiff testified during the February 6, 2017 hearing before the ALJ that the last time she had seen Dr. Wiegman was two years earlier. R. 55.

Moreover, ALJs are required to consider prior administrative medical findings by state agency medical consultants because they are highly qualified and experts in Social Security

disability evaluation.  20 C.F.R. §§ 404.1513a(b)(1), 404.1520b, 404.1527, 416.920b, 416.927, and 416.913a(b)(1).

Therefore, the Court rejects Plaintiff's argument that the ALJ erred in according great weight to the opinions of state agency doctors.

### C.  Mental RFC

Plaintiff contends that the ALJ failed to properly develop her mental capacity RFC, and that a consultative examination should have been ordered to evaluate her affective and anxiety disorders.  In assessing the mental RFC, the ALJ acknowledged that Plaintiff had medically determinable mental impairments of depression, anxiety and panic attacks, but concluded the impairments—considered singly and in combination—did not cause more than minimal limitation in her ability to perform basic mental work activities, and were therefore nonsevere.  R. 17.

Because the ALJ, rather than a physician, is responsible for determining a claimant's RFC from the medical record, the Tenth Circuit has "rejected [the] argument that there must be specific, affirmative medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category."  *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).  *See also Bernal v. Bowen*, 851 F.2d 297, 302-03 (10th Cir. 1988) (holding that the ALJ properly made mental RFC findings without expert medical assistance)

In this case, the ALJ performed the Psychiatric Review Technique required when allegations of mental impairment are made, and concluded with respect to each of the areas evaluated that the evidence supported only mild limitations. R. 17-18.  Pursuant to the Commissioner's regulations, this supports a finding that the mental impairments are nonsevere. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  Accordingly, the Court finds no error in the ALJ's failure to include any RFC restrictions due to Plaintiff's alleged mental impairments.

## V. Conclusion

For the reasons set forth above, the Court concludes that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further, that the ALJ's decision is supported by substantial evidence. Accordingly, the Court overrules Plaintiff's objections to the Report and Recommendation, affirms and adopts the Report and Recommendation of the Magistrate Judge, and finds in favor of the Commissioner on Plaintiff's appeal of the denial of her application for Social Security benefits.

ENTERED this 30th day of July, 2019.

TERENCE C. KERN
United States District Judge